**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


<u>Laser Projection</u>
<u>Technologies, Inc.</u>

   v.                                                    Civil No. 12-cv-427-PB

<u>Kyle Ithal</u>


### REPORT AND RECOMMENDATION

    Laser Projection Technologies, Inc. ("LPT") has sued its former employee, Kyle Ithal, in two counts. Based upon a non-disclosure agreement between itself and Ithal (Count I) and the New Hampshire Trade Secrets Act (Count II), LPT seeks to enjoin Ithal from: (1) taking a position with The Boeing Company ("Boeing"), which is one of LPT's customers; and (2) disclosing or using its trade secrets and confidential information while employed by Boeing. Before me for a report and recommendation is LPT's motion for an immediate temporary restraining order and, after notice and hearing, a preliminary injunction. Ithal objects in part. Specifically, he contends that LPT is not entitled to an injunction barring him from going to work for Boeing, but he assents to being enjoined from: (1) disclosing LPT's trade secrets; and (2) inducing Boeing to terminate any agreements or understandings it may have with LPT. The court

heard oral argument on LPT's motion on November 8, 2012.  For the reasons that follow, I recommend that LPT's motion be granted in part and denied in part.

## Background

The following background is drawn from LPT's complaint and the exhibit attached to Ithal's objection to LPT's motion.  From October 1, 2007, through October 19, 2012, Ithal was employed by LPT as an application engineer.  LPT is in the business of providing "highly advanced three-dimensional laser templating and measurement equipment and engineering services."  Compl. (doc. no. 1) ¶ 8.  LPT terminated Ithal's employment at the end of a conference call involving LPT, Ithal, and Boeing.  The purpose of the call was to discuss Ithal's intention to accept a job offer from Boeing.  Boeing, in turn, takes a variety of steps to prevent its employees from using the confidential information of their former employers.[1]  Ithal is scheduled to start work at Boeing on Friday, November 9, 2012.

---

[1] In its objection to LPT's motion, Ithal represents that Boeing offered LPT the opportunity to draft the terms of an agreement between Boeing and Ithal that would bar Ithal from using LTP's confidential information while working for Boeing, but LPT declined the offer.

As a condition of his employment by LPT, Ithal executed a non-competition and non-disclosure agreement (hereinafter "NDA") that includes the following relevant provisions:

> 2. **Non-Competition**.  During the period of employment by the Company, Employee will devote full time and best efforts to the business of the Company.  Further, during the period of employment by the Company and for a period of fifteen (15) months after the Termination Date, Employee will not, singly, jointly, or as a partner, member, employee' agent, officer, director, stockholder equity holder, lender, consultant, independent contractor, or joint venturer of any other Person, or in any other capacity, directly or beneficially:
>
> . . . .
>
> (iv)  induce or attempt to induce any Person which is a customer of the Company or any of its Subsidiaries, or which otherwise is a contracting party with the Company or any of its Subsidiaries, as of the date hereof or at any time hereafter during the term of this Agreement to terminate any written or oral agreement or understanding with the Company or any of its Subsidiaries.
>
> 3. **Direct Competition Prohibited**.  Without limiting the provisions of Section 2, Employee shall not seek or accept employment or consulting engagements or provide any type of services to any of the Company's current or future primary competitors for a period of fifteen (15) months following the Termination Date.  As of the date of this Agreement, Employee acknowledges that the Company's primary competitors are Virtek Vision International, Inc., GSI Lumonics (formerly General Scanning Inc.), Lumen Laboratories Inc., and Assembly Guidance Inc. and their respective affiliates and related business entities.

> Employee acknowledges that due to the nature of his position and his resulting access to Company Confidential Information as defined in Section 4 below, the disclosure of Company Confidential Information would be inevitable were he to become employed by a primary competitor within the near term after his termination of employment with Company.
>
> 4. **Non-Disclosure Obligation**. Employee will not, at any time during his employment or at any time thereafter, disclose any Company Confidential Information. For purposes of this Agreement, "Company Confidential Information" means all information used by the Company and not generally known, whether or not marked "Confidential". . . .

Pl.'s Mot. for TRO, Ex. 1 (doc. no. 4-2), at 2-3. Based upon the NDA, and the New Hampshire Trade Secret Act, LPT moves the court "to issue a temporary restraining order and, after notice and hearing, a preliminary injunction restraining [Ithal] from commencing employment with [Boeing] and from disclosing or using LPT's trade secrets and confidential information – which is to commence on Friday, November 9, 2012." Pl.'s Mot. for TRO (doc. no. 4), at 1 (emphasis in the original).

## The Legal Standard

The court of appeals for this circuit has recently described the standard for granting preliminary injunctive relief:

> In considering a request for a preliminary injunction, a trial court must weigh several factors: (1) the likelihood of success on the merits; (2) the

potential for irreparable harm to the movant in the absence of an injunction; (3) the balance of the movant's hardship if relief is denied versus the nonmovant's hardship if the relief is granted; and (4) the effect, if any, of the decision on the public interest. Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 15 (1st Cir. 1996). Of these four factors, the movant's likelihood of success "is the touchstone of the preliminary injunction inquiry." Philip Morris, Inc. v. Harshbarger, 159 F.3d 670, 674 (1st Cir. 1998) . . . . "[I]f the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002).

Me. Educ. Ass'n Benefits Trust v. Cioppa, 695 F.3d 145, 152 (1st Cir. 2012). "To determine whether to issue a temporary restraining order, [the court] applies the same four-factor analysis used to evaluate a motion for preliminary injunction." Nw. Bypass Grp. v. U.S. Army Corps of Eng'rs, 453 F. Supp. 2d 333, 338 (D.N.H. 2006) (citing Largess v. SJC for Mass., 317 F. Supp. 2d 77, 81 (D. Mass. 2004); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bishop, 839 F. Supp. 68, 70 (D. Me. 1993)).

### Discussion

As the court has noted, LPT moves the court to enjoin Ithal from: (1) disclosing or using its trade secrets and confidential information; and (2) taking a job with Boeing. The court considers each aspect of LPT's proposed injunction in turn.

5

1. Non-Disclosure

LPT asks the court to enjoin Ithal from "disclosing or using LPT's trade secrets and confidential information," Pl.'s Mem. of Law (doc. no. 4-1), at 1, which is the conduct proscribed by Section 4 of the NDA. Ithal concedes the point, and further assents to being enjoined from engaging in the conduct proscribed by Section 2(iv). Moreover, at the hearing, Ithal invited the court to issue a TRO, a preliminary injunction, or a permanent injunction barring him from the conduct proscribed by Sections 2(iv) and 4 of the NDA.

Given Ithal's assent, and in light of the relevant provisions of the NDA, i.e., Sections 2(iv) and 4, I recommend that the court issue an order that enjoins Ithal as follows:

> (1) for a period of fifteen months running from the date of Ithal's departure from LPT, Ithal shall not induce or attempt to induce any person which was a customer of LPT or any of its subsidiaries, or which otherwise was a contracting party with LPT or any of its subsidiaries, as of the date of Ithal's departure from LPT, to terminate any written or oral agreement or understanding with LPT or any of its subsidiaries; and
>
> (2) Ithal shall not, at any time, disclose any of LPT's confidential company information, which is defined to mean all information used by LPT and not generally known, whether or not marked "confidential."

Given Ithal's willingness to be bound by those obligations, I further recommend that the foregoing relief be granted in the form of a permanent injunction.

### 2. Ithal's Employment with Boeing

In Count I of its complaint, LPT asserts that "Ithal's employment with Boeing will constitute a violation of his contractual duties under the NDA."  Doc. no. 1 ¶ 54.  In Count II, it asserts that "Ithal's threatened employment with Boeing would require the disclosure and misappropriation by Ithal of [LPT's] trade secrets by improper means, namely through the breach of the NDA, within the meaning of R.S.A. 350-B:1."  Id. ¶ 59.  LPT's theory of the case is that Ithal's employment by Boeing would violate Section 2(iv) and Section 4 of the NDA.[2]  The court does not agree.  Because LPT has no likelihood of success on the merits of Counts I and II, to the extent the claims asserted in those counts are based upon Ithal's going to work for Boeing, LPT is not entitled to an injunction barring Ithal from starting his new job with Boeing.

---

[2] In its motion, LPT seems to suggest that Ithal's employment by Boeing would violate Section 3 of the NDA, which bars former LPT employees from seeking or accepting employment from any of LPT's "primary competitors."  Boeing, however, is not a competitor of LPT and, at the hearing, LPT wisely backed away from any claim that Ithal would violate Section 3 by taking a job with Boeing.

7

In Section 3 of the NDA, Ithal acknowledged that disclosure of LPT's confidential information "would be inevitable were he to become employed <u>by a primary competitor</u> . . . ."  Pl.'s Mot. for TRO, Ex. 1 (doc. no. 4-2), at 3 (emphasis added).  The agreement, however, does not say that disclosure is inevitable when a former LPT employee takes a job with an LPT customer, which is what Ithal seeks to do here.  LPT could have drafted the NDA to include language to that effect, but it did not.  Similarly, LPT could have drafted the NDA to prohibit former employees from going to work for its customers but, again, it did not.

In the absence of any support for its position in the NDA, LPT is reduced to making a bald assertion that Ithal's employment by Boeing, without more, would "caus[e] Ithal to disclose LPT's trade secrets and confidential, proprietary knowledge and induc[e] Boeing to 'terminate any written or oral agreement or understanding with the Company.'  NDA, § 2(iv)."  Pl.'s Mem. of Law (doc. no. 4-1), at 1.  LPT elaborated a bit at the hearing, expressing its disbelief that Ithal could possibly work for Boeing without violating the NDA.  Under the circumstances of this case, LPT's unsupported belief in Ithal's inability to work for Boeing without disclosing confidential LPT

information is substantially outweighed by: (1) Ithal's willingness to have his obligations under the NDA backstopped by a court order; and (2) Boeing's position, which is not just a willingness to do without any confidential LPT information Ithal may have but, rather, an affirmative directive to Ithal that he, like any other Boeing employee, is not to disclose any confidential information belonging to a former employer.  In sum, there is no basis for LPT's assertion that Ithal's employment by Boeing would necessarily result in a violation of Section 4 of the NDA.

LPT's assertion that Ithal's employment by Boeing would result in his violating Section 2(iv) of the NDA is also baseless.  Section 2(iv), and the injunction I recommend, both prohibit Ithal from inducing Boeing to terminate any agreement or understanding it has with Ithal.  The complaint, however, identifies no such understanding or agreement.  It certainly describes LPT's interest in having a long-term relationship with Boeing, and investments LPT has made in the hope that such a relationship might come to pass.  But nowhere does the complaint identify any actual agreement or understanding between Boeing and LPT that has been terminated or could be terminated by

Boeing.[3] When pressed on this point at the hearing, LBT pointed to paragraphs 35 and 39 of its complaint. Paragraph 39 alleges that if Ithal goes to work with Boeing, Boeing will "cease contracting with LPT," but declining to enter into future contracts is not the same thing as terminating an existing agreement, which is the conduct proscribed by Section 2(iv). Without an agreement or understanding for Boeing to terminate, and LPT has not identified any such agreement, Ithal's employment by Boeing could not possibly result in a violation of Section 2(iv) of the NDA.

    The bottom line is this. LPT has no likelihood of success on the merits of its claim that Ithal would necessarily violate the NDA by going to work for Boeing. Accordingly, I recommend that the court not issue an injunction barring Ithal from doing so.

---

[3] IPT indicated that it did some work for Boeing on an "as needed" basis, but did not suggest that its work for Boeing was undertaken pursuant to any kind of on-going service contract. Based upon LPT's own characterization of its relationship with Boeing, any understanding of future work for Boeing seems to have been unilateral. See Compl. ¶ 39 ("It was LPT's understanding that LPT would continue to provide support services . . .").

**Conclusion**

For the foregoing reasons, I recommend that LPT's motion for temporary and preliminary injunctive relief, document no. 4, be granted in part and denied in part, as specified above.

Any objections to this report and recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). Failure to file objections within the specified time waives the right to appeal the district court's order. See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011), cert. denied, 132 S. Ct. 1045 (2012); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by district court; issues not preserved by such objection are precluded on appeal).

_____
Landya McCafferty
United States Magistrate Judge

November 8, 2012

cc: Lawrence M. Kraus, Esq.
    Courtney Worcester, Esq.